UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| SONYA PARROTT AKERS, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| THE COUNTY OF BELL; ALBEN | ) | Civil No. 08-389-GFVT |
| BROCK, JR., individually and in his official | ) | |
| capacity as Bell County Judge Executive; | ) | |
| COYE H. SILCOX, HUBERT DOZIER, | ) | |
| RICK CORNETT, LONNIE MAIDEN, JR., | ) | **MEMORANDUM OPINION** |
| and ANDREW WILLIAMS, in their official | ) | **& ORDER** |
| capacities as Members of the Bell County | ) | |
| Fiscal Court; and NEIL WARD, individually | ) | |
| and in his official capacity as Bell County | ) | |
| Attorney, | ) | |
| | ) | |
|     Defendants. | ) | |
| | ) | |

*** *** *** ***

This matter is before the Court on the Motion for Summary Judgment [R. 15] filed by the Defendants. The Plaintiff has filed a response objecting to the motion [R. 16]. Further, both parties, at the Court's direction, have filed supplemental memoranda addressing the propriety of summary judgment with respect to the Plaintiff's First Amendment retaliation claim. [R. 34, 35.] On January 13, 2010, the Court conducted a hearing on the motion.

Additionally, this matter is before the Court on the Defendants' Motion for Leave to Supplement their pending summary judgment motion [R. 27]. Again, the Plaintiff has filed a response objecting to the motion [R. 29]. For the reasons set forth below, both the Motion to Supplement [R. 27] and the Motion for Summary Judgment [R. 15] are granted.

1

## I.

The Plaintiff, Sonya Parrott Akers, was employed as a secretary in the Bell County Attorney's Office until her termination in 2007.  [R. 1.]  According to her Complaint, in December of that year, she was called into a meeting with County Judge Executive Alben Brock, Jr., and County Attorney Neil Ward.  [R. 1, ¶ 12.]  At that meeting, her employment was terminated.  [*Id.*]  Akers raises three claims relating to her discharge.  First, she claims that her discharge violated her due process rights.  Second, she claims that she was wrongfully discharged in retaliation for her conduct in seeking public office and her complaints regarding perceived illegal activities in the general election in Bell County.  Finally, she claims that her discharge violated Kentucky's Whistleblower Act.  Akers asks for damages including lost wages and lost health care and retirement benefits.

## II.

The Court considers first the Defendants' Motion for Leave to Supplement [R. 27].  The Defendants seek to supplement their summary judgment motion with a recent decision of the Kentucky Court of Appeals, *Thornton v. Office of the Fayette County Attorney*, 292 S.W.3d 324 (Ky. App. 2009).  The Defendants believe that *Thornton* is "directly on point on the issue of whether Plaintiff was an at-will employee of the Bell County Attorney . . . ."  [R. 27, Attach. 1 at 2.]

Akers objects.  Her first objection relates to the fact that, when the Defendants filed their motion to supplement, the *Thornton* decision was not final.  Since that time, however, the decision has become final, and therefore this objection is moot.  Akers further argues that permitting the Defendants to supplement their motion is prejudicial to her unless she is allowed

2

to respond in detail.

Federal Rule of Civil Procedure 15(d) provides that, "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  A motion for leave to supplement "like an application for leave to amend a complaint is addressed to the sound discretion of the trial court and should be freely granted when doing so will promote the justiciable position of the case, will not cause undue prejudice or delay or trial inconvenience and will not prejudice the rights of any parties to the action."  *See Bates v. Western Elec.*, 420 F. Supp. 521, 525 (D.C. Pa. 1976).  Here, granting the Defendants leave to supplement will not delay this case.  Additionally, in spite of Akers's statements to the contrary, no prejudice will result from allowing the Defendants to supplement their motion for summary judgment.  In her response to the motion to supplement, Akers argues that *Thornton* is distinguishable from her case, and she supports her argument with specific examples.  The Court will take her arguments into consideration in its review of the *Thornton* case.

### III.

### A.

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'"  *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D.

Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  Stated

otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position

will be insufficient; there must be evidence on which the jury could reasonably find for the

plaintiff."  *Anderson*, 477 U.S. at 252.  In reviewing a motion for summary judgment, the court

"must construe the evidence and draw all reasonable inferences in favor of the nonmoving party."

*Browning v. Dept. of Army*, 436 F.3d 692, 695 (6th Cir. 2006) (citing *Matsushita Elec. Indus. Co.*

*v. Zenith Radio Corp.*, 495 U.S. 574, 587 (1986)).

**B.**

**1.**

As stated previously, Akers claims that her termination violated her right to due process

of law, as she was not afforded notice or a hearing.  In their motion for summary judgment,

however, the Defendants argue that Akers was an at-will employee of the Bell County Attorney's

Office, and, as an at-will employee, she was not entitled to a pre- or post-discharge hearing.

In *Bailey v. Floyd County Bd. of Educ.*, the Sixth Circuit noted that the Fourteenth

Amendment prohibits state actors from depriving an individual of property without due process

of law.  106 F.3d 135, 140-41 (6th Cir. 1997) (citing U.S. CONST. amend. XIV).  The court

explained that "government employees with a protectable property interest in their jobs are

ordinarily entitled to pre-deprivation notice of the charges, an explanation of the employer's

evidence, and an opportunity to present their account of the events."  *Id.* at 141 (citing *Cleveland*

*Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)).  Absent such a property interest, however,

an employee is "not entitled to any pre-deprivation process whatsoever."  *Id.* (citation omitted).

The *Bailey* court further explained that "[a]n at-will employee is subject to dismissal at anytime

4

and without cause; consequently, an at-will employee cannot effectively claim a protectable property interest in his or her job." *Id.*

In Kentucky, the general rule is that, in the absence of a statutory provision or a specific contractual provision to the contrary, employment is terminable at-will. *See id.*; *Miracle v. Bell Co. Emergency Med. Servs.*, 237 S.W.3d 555, 558 (Ky. App. 2007). This means that "an employer may ordinarily discharge an employee 'for good cause, for no cause, or for a cause that some might view as morally indefensible.'" *Miracle*, 237 S.W.3d at 558 (quoting *Firestone Textile Co. Div. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1983)).

Here, Akers cites no statute that provides her with a property interest in her job as secretary to the Bell County Attorney. Indeed, in *Thornton* the Kentucky Court of Appeals cites a statute that may classify Akers's position as at-will. 292 S.W.3d at 328. Under the terms of KRS 15.770(4), "[a]ny personnel appointed by the county attorney, under this section, who assist in the prosecutorial duties of District Court, shall be appointed for the duration of the unexpired part of the term of the county attorney, and subject to removal at the discretion of the county attorney." An affidavit submitted by County Attorney Neil Ward states that Akers was solely an employee of the County Attorney's Office, suggesting that she was "appointed by" the county attorney. [R. 15, Attach. 2.] Akers contends that she was hired by the Bell Fiscal Court and assigned to the Bell County Attorney as a legal secretary [R. 16, Attach. 5], and she attaches minutes from a meeting of the Bell County Fiscal Court in support of her argument. According to the minutes, on July 26, 1999, a motion was made and seconded "to hire Sonya Akers as secretary for the county attorney . . . ." [*Id.*, Attach. 6.] These minutes, however, suggest that the Fiscal Court may have merely approved the County Attorney's hiring of Akers as a routine

matter for the purpose of paying a portion of her salary out of county funds. Further, even assuming that Akers's characterization of the facts is correct, *see Browning*, 436 F.3d at 695, Akers herself represents to the Court that she assisted the County Attorney in the prosecutorial duties of District Court. In her Complaint, for example, she states that her duties were secretarial in nature, but that "[s]he is also trained as a paralegal and performed such additional functions for the county attorney." [R. 1, ¶ 10.] More significantly, in her response to the summary judgment motion, she states that her "primary role . . . was to assist the county attorney in the collection of delinquent taxes." [R. 16 at 7.]

Even without the statute, however, the Court would find, and does find, that Akers's employment as a secretary in the Bell County Attorney's Office was at-will. Akers argues that the county attorneys in office during her employment "opted-in" to the Bell County Administrative Code, and that the Code essentially constitutes a contract with county employees that triggers due process requirements. The Defendants contend that these county attorneys never opted-in to the Code. In *Miracle v. Bell Co. Emergency Med. Servs.*, the Kentucky Court of Appeals considered Bell County emergency medical employees' argument that, "rather than being at-will employees, they were protected by an implied employment contract created by the terms of the Bell County EMS Standard Operating Procedures (SOP) and the Bell County Administrative Code." 237 S.W.3d at 558. The Court determined that "although the Administrative Code established general supervisory and disciplinary policies for county employees, neither the SOP nor the Code included specific contractual rights or other obligations altering the parties' at-will employment relationship." *Id.* at 558-59. *See also Bailey*, 106 F.3d at 142-43 (employer's policies and procedures manual did not affect plaintiff's at-will status).

6

Thus, in a published opinion from 2007, the year in which Akers was terminated, the Kentucky Court of Appeals held that the Bell County Administrative Code did not give county employees a property interest in their jobs.

Accordingly, regardless of whether or not the county attorneys opted-in or opted-out of the Code, the result is the same: Akers was an at-will employee. Therefore, she was not entitled to due process prior to her termination. Summary judgment is granted to the Defendants on Akers's due process claim.

### 2.

There is a "narrow public policy exception" to the general rule that at-will employees may be terminated without cause. *See Miracle*, 237 S.W.3d at 558. Pursuant to this exception, an "employee has a cause of action for wrongful discharge when the discharge is contrary to a fundamental and well-defined public policy as evidenced by existing law . . . . The public policy must be evidenced by a constitutional or statutory provision." *Id.* (quoting *Firestone*, 666 S.W.2d at 731.). Here, in her second claim, Akers alleges that she was terminated in retaliation for exercising her First Amendment rights.

In order to make out a prima facie case for a First Amendment claim, Akers must show that (1) she was engaged in constitutionally protected speech; (2) she was subjected to an adverse action or deprived of some benefit; and (3) the protected speech was a substantial or motivating factor in the adverse action. *Banks v. Wolfe Co. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003) (citing *Brandenburg v. Housing Authority of Irvine*, 253 F.3d 891, 896 (6th Cir. 2001)). To demonstrate that her speech was constitutionally protected, Akers "must show that her speech touched on matters of public concern, and that her 'interest in making such statements outweighs

the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Id.* (quoting *Pickering v. Board of Educ. Of Township High School, Dist. 205*, 391 U.S. 563, 568 (1968)).  Further, "speech addressing a matter of public concern is speech relating to 'any matter of political, social, or other concern to the community.'" *Id.* at 893 (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)).  "By contrast, a public employee's speech dealing with 'matters only of personal interest' is generally not afforded constitutional protection." *Id.* (quoting *Connick*, 461 U.S. at 147).

Akers identifies essentially three categories of speech which she contends are constitutionally protected: (1) her speech related to her activities in campaigning for the office of Bell Circuit Court Clerk; (2) her complaints to the state board of elections and her communications with the State Attorney General's Office regarding the administration of the election by county clerk employees, namely deputy clerk Becky Blevins; and (3) her communications with county magistrates regarding the incentive bonus/raise program for county employees implemented by Bell County Judge Executive Brock.  [R. 34 at 2.]  Of these categories, the second and third are perhaps the simplest to analyze.

With respect to the third category, Akers's counsel stated at the hearing on the Defendants' summary judgment motion that these communications consisted of asking certain magistrates why she did not receive a bonus or raise under the program.  Accordingly, the Court agrees with the Defendants that Akers's speech regarding the incentive bonus program dealt with a matter of personal interest alone and is not afforded constitutional protection.  In confronting magistrates about her failure to receive a raise, Akers was speaking in her capacity as an employee, not in her capacity as a citizen.  *See Nair v. Oakland County Community Mental*

*Health Authority*, 443 F.3d 469, 478 (6th Cir. 2006).

With respect to the second category, Akers's communications with state authorities regarding possible election law violations, "'[p]ublic interest is near its zenith when ensuring that public organizations are being operated in accordance with the law.'" *Banks*, 330 F.3d at 896 (quoting *Chappel v. Montgomery County Fire Protection Dist. No. 1*, 131 F.3d 564, 576 (6th Cir. 1997)). Although Akers has not provided documentary evidence of the content of her communications with state authorities, there is no dispute that these communications occurred, and she has provided sufficient evidence in the context of summary judgment for the Court to find that this speech, at least in part, touched on a matter of public concern. Moreover, her interest in reporting possible illegal activity certainly outweighs the interest of her employer in promoting the efficiency of the public services it performs through its employees. *See id.* at 892. Thus, some of Akers's statements to the State Board of Elections and the Attorney General's Office undoubtedly are constitutionally protected.

Proceeding with the analysis, Akers has shown that she was subject to an adverse action[1]–her termination from employment in the Bell County Attorney's Office.[2] Akers,

_____

[1]In *Hoover v. Radabaugh*, 307 F.3d 460, 466 (6th Cir. 2002), the Sixth Circuit explained that "the defendants' adverse action must constitute an injury that would likely chill a person of ordinary firmness from engaging in the protected activity." And "[t]ermination is an adverse action that would chill speech in a person of ordinary firmness." *Id.* at 466-67 (citation omitted).

[2]In her supplemental brief, Akers suggests that her failure to receive a raise under the incentive bonus program also constitutes an adverse action. Akers did not mention her failure to receive a raise or bonus in her Complaint; in fact, she did not mention her communications with magistrates regarding the incentive bonus program in her Complaint. Addressing the issue briefly, the Court notes that Akers's failure to receive a raise or bonus may not even be considered an adverse action, as she did not suffer any loss or diminution of wages or benefits. *See Adair v. Charter County of Wayne*, 452 F.3d 482, 490 (6th Cir. 2006). Additionally, County Judge Executive Brock testified at his deposition that only a minority of employees received the

however, has not shown that her complaints of possible election law violations were a substantial or motivating factor in her dismissal.  In order to demonstrate that constitutionally protected statements were a motivating factor for an adverse action, "the employee must point to specific, nonconclusory allegations reasonably linking her speech to employer discipline." *Rodgers v. Banks*, 344 F.3d 587, 602 (6th Cir. 2003) (citations and internal quotation marks omitted).  Here, Akers has stated only that other employees in the County Attorney's Office overheard her on the phone making these complaints to state authorities, and it does appear that County Attorney Neil Ward knew about the complaints.  Akers does not suggest or even imply that she made any complaints about Ward himself, who made the decision to fire her.  Rather, she states that she made reports about the activities of county clerk employees, and specifically Becky Blevins.  Thus, Akers's reporting of suspected illegal activity assists her "in proving only that a non-defendant third party may have been motivated to act against her as a result of her speech." *Bailey v. Floyd Co. Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997).

Further, Akers initially made complaints to state authorities in the 2006 primary and general election seasons; her employment was not terminated until December of 2007.  And in her affidavit attached to her Response to the motion for summary judgment, Akers states that, after a meeting with Ward regarding her employment in January 2007, she felt she was being retaliated against for seeking public office and would soon be fired for seeking office [R. 16, Attach. 5 at ¶ 3]; she says nothing, however, about any indication Ward was upset with her for any communications with the State Board of Elections or the Attorney General's Office.

---

incentive raise.  [R. 33, Attach. 1 at 37.]  Even if it is considered an adverse action, Akers has not connected any protected political speech with the decision not to give her a raise or bonus.

Accordingly, Akers has produced insufficient evidence to raise a genuine issue of material fact with respect to her First Amendment retaliation claim relating to complaints of potential election law violations to state authorities.

Akers suggests that her first identified category of speech, her speech related to her activities in campaigning for the office of Bell Circuit Court Clerk, necessarily addresses a matter of public concern and is therefore constitutionally protected.  Akers, for example, cites *Elrod v. Burns*, 427 U.S. 347 (1976), for the proposition that "[c]ampaigning for public office no matter how unorthodox is protected speech under the First Amendment."  [R. 34 at 7.  *See also* R. 16 at 17.]  Akers refers to the following passage from *Elrod*:

> Regardless of the nature of the inducement, whether it be by the denial of public employment or . . . by the influence of a teacher over students, "if there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein."

*Elrod*, 427 U.S. at 356 (quoting *Board of Education v. Barnette*, 319 U.S. 624, 642 (1943)).  This passage appears in the course of the Supreme Court's discussion of a sheriff's practice of dismissing employees on a partisan basis, "one form of the general practice of political patronage."  *Id.* at 353.  The Court later noted that "the practice unavoidably confronts decisions by this Court either invalidating or recognizing as invalid government action that inhibits belief and association through the conditioning of public employment on political faith."  *Id.* at 357.  Clearly, however, neither the passage nor the case suggests that speech related to campaigning for public office is always constitutionally protected.

Similarly, Akers cites *Sowards v. Loudon County, Tenn.*, 203 F.3d 426 (6th Cir. 2000), for the proposition that "[c]ampaigning for a candidate for public office, even oneself, is a

fundamental right protected under the First Amendment and is also a matter of public concern."

[R. 34 at 7; R. 16 at 17.]  *Sowards*, however, involved a jailer allegedly terminated for supporting

her husband's campaign for the office of sheriff, and the court held that "[s]upport of a political

candidate falls within the scope of the right of political association."  *Sowards*, 203 F.3d at 432.

The employee in *Sowards* "was not politically active at work . . . ."  *Id.* at 435.  *Sowards*, then,

did not involve political speech, much less political speech in the workplace.  Thus, neither *Elrod*

nor *Sowards* supports Akers's broad contention that statements related to campaigning for public

office are always protected by the First Amendment.

Akers has not provided the Court with examples of specific statements she made in the

course of campaigning for the office of Bell Circuit Court Clerk.  From her pleadings, the Court

has gleaned that Akers discussed her opinions about how the Clerk's Office should be run, as

well as her views about the "shortcomings of her young, inexperienced opponent."  [R. 16 at 20.]

She also wore her political pin to work, and she asserts that she had heard of "nefarious

activities" arising out of the business dealings of her opponent's father, a local pawn shop owner,

and that she made it a point to discuss this issue with voters.  [R. 34, Attach. 1 at ¶ 5.]  At the

hearing on the Defendants' summary judgment motion, Akers's counsel noted that she solicited

votes as well.  Examples of specific statements would have been helpful to the Court, as

"'[w]hether an employee's speech addresses a matter of public concern must be determined by

the content, form, and context of a given statement, as revealed by the whole record.'"  *Banks*,

330 F.3d at 893 (quoting *Connick*, 461 U.S. at 147-48).  Still, the Court finds that Akers's speech

relating to her political campaign should at the very least be viewed as "mixed speech," with

some statements touching on matters of public concern.  *See id.* at 894.  Akers's reference to

statements about the way in which the Clerk's Office should be run suggests that she spoke, at least in part, on "issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government." *Farhat v. Jopke*, 370 F.3d 580, 590 (6th Cir. 2004).

Next, the Court must determine if Akers's interest in making such statements outweighs the interest of the Government in promoting the efficiency of the public services it performs through its employees. *See Pickering*, 391 U.S. at 568. In *Farhat*, the Sixth Circuit explained that the Supreme Court has "emphasized that the government as employer has efficiency concerns that give it greater discretion in dealing with a disruptive employee, more discretion than it would have to deter speech by a private citizen." *Farhat*, 370 F.3d at 594 (citing *Waters v. Churchill*, 511 U.S. 661, 674-75 (1994)). For example, "'a public employer may, consistently with the First Amendment, prohibit its employees from being rude to customers,' as well as to other employees . . . ." *Id.* (quoting *Waters*, 511 U.S. at 673). Specifically, the Sixth Circuit has set forth the following factors for courts to consider in balancing the interests of the employee and government employer:

> whether the speech "related to an issue of public interest and concern; was likely to foment controversy and disruption; impeded the department's proper functioning; subverted department discipline; was false and the employer could not have easily rebutted or corrected the errors; and was directed toward a person whom the speaker normally contacted within the course of daily work."

*See v. City of Elyria*, 502 F.3d 484, 493 (6th Cir. 2007) (quoting *Solomon v. Royal Oak Twp.*, 842 F.2d 862, 865 (6th Cir. 1988)).

Akers makes the conclusory statement that her activities in campaigning for public office produced only "minor disruptions that did not adversely affect the administration of the county

attorney's office . . . ." [R. 34 at 13.]  Other evidence in the record, however, tells a different

story.  In his affidavit, for example, Ward avers that he received numerous complaints of Mrs.

Akers campaigning during work hours.  [R. 15, Attach. 2 at ¶ 8.]  He further asserts that Akers

was frequently seen on the street campaigning during business hours, and that he personally

observed her campaigning in his office.  [*Id.* at ¶¶ 9-10.]  Ward also states that he received a

complaint of Akers verbally attacking Orville Brock outside the county court clerk's office

during business hours because he was supporting her opponent.  [*Id.* at ¶ 12.]  Akers emphasizes

that there was no official rule or policy prohibiting her from campaigning on "county time."  [R.

34 at 3.]  This argument, however, misses the point.  The numerous complaints received by Ward

suggest that Akers's campaigning in the courthouse was disruptive.  And at the very least it had

the potential to interfere with Akers's ability and Ward's ability to carry out the duties of the

County Attorney's Office in an efficient manner, if it did not actually do so.  It is likely that this

"'disruptiveness was enough to outweigh whatever First Amendment value the speech might

have had.'" *Farhat*, 370 F.3d at 595 (quoting *Waters*, 511 U.S. at 681).  Therefore, it is likely the

speech is not constitutionally protected.

 Ultimately, however, the Court need not decide whether Akers's speech related to her

campaign is constitutionally protected under the facts of this case.  Even if the Court assumes

that such speech is constitutionally protected, Akers has not demonstrated that expressive activity

related to her campaign for public office was a substantial or motivating factor in her

termination.[3]  First, more than a year lapsed between the election in 2006 and Akers's

---

[3]Akers states that Ward has admitted that her constitutionally protected activities were a
substantial factor in his decision to terminate her employment.  The record, however, does not
support that statement.  At his deposition, Ward did admit that he did not want Akers to wear her

14

termination in December of 2007. Thus, the time between any protected activity and the adverse employment action is not so brief that their "close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise." *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004). *See also Parnell v. West*, 114 F.3d 1188 (Table), 1997 WL 271751, at *3 (6th Cir. 1997) ("A time lag of seven months does not necessarily support an inference of a causal line; previous cases that have permitted a prima facie case to be made based on the proximity of time have all been short periods of time, usually less than six months.").

Akers's only evidence in support of her First Amendment retaliation claim appears to be her account or summary of a meeting she had with Ward in January of 2007, shortly after the election. [R. 16, Attach. 5 at ¶ 3.] Although Akers does not provide many specifics about this meeting, she does state that Ward informed her that she was "destroying his office," and she states that this was the first time he had complained to her about any of her conduct during the election season. [*Id.*] She further states that, after the meeting, she "felt" she would soon be fired for seeking office.[4] [*Id.*]

———————————————

campaign pin (though he did not say anything to her about it at the time), and that he was glad when the election was over. Ward then explained that Akers served as his trial assistant many times, and he feared that jury members who intended to vote for Akers's opponent might see the pin and be biased against his prosecution. [R. 33, Attach. 3 at 34.] Thus, while Ward may not have been altogether pleased with the disruptive affect Akers's activities in campaigning for public office during business hours had or had the potential to have on the operations of his office, he never attempted to stifle her political expression, and he has not indicated that those activities played a role in his decision to dismiss her.

[4]In this same paragraph in her affidavit, Akers also states that she felt she was being retaliated against for changing her party affiliation. [R. 16, Attach. 5 at ¶ 3.] This is the only time Akers references changing her party affiliation, and there is no other evidence in the record suggesting that a change in her party affiliation was a factor in the termination of her employment.

While Akers may have "felt" that she would be terminated for seeking office, her affidavit does not identify any conduct or specific statements made by Ward that might link her termination with any protected political statements she made during the election season. *See Rodgers v. Banks*, 344 F.3d at 602. Indeed, it does not make any sense that Ward would complain to Akers about her election activity after the election was over, but then not fire her based on that activity until eleven months later. And Akers does not offer any potential explanation for this time lag. Akers's conclusory recollection of the meeting is insufficient to raise a genuine issue of material fact regarding whether or not her protected speech was the substantial or motivating factor in her termination.

Akers also points to a memo circulated by County Judge Executive Brock before the election stating that, if he was elected, all employees would be keeping their jobs except one. [R. 16, Attach. 5 at ¶ 4.] She states that she believes that the memo refers to her, because she was the only employee terminated after the election. [*Id.*] This "belief" is not supported by anything in the record. In his deposition, Brock states that the one employee he intended to fire was John O'Boyle, but he ultimately decided not to dismiss him. [R. 33, Attach. 1 at 41.] Further, there is no indication that this memo, which has not been provided to the Court, gave any reason, such as seeking public office, that this one employee would be fired. And, again, it does not make sense, nor does Akers offer any reason, that Brock would plan to fire Akers in retaliation for her political activity during the election season, but then wait until a year after the election to do it.

With that said, "[i]f retaliation for protected speech was a substantial or motivating factor in" the employer's adverse action against the employee, then the employer "may present evidence that they would have taken this action in the absence of her protected conduct." *Banks*, 330 F.3d

16

at 893 (citation omitted).  Because Akers has not raised a genuine issue of material fact regarding whether her protected speech was a substantial factor in her termination, the Court need not decide whether the Defendants have presented sufficient evidence to demonstrate that they would have dismissed Akers in the absence of her protected conduct.  In addition, the Court notes that whether the employer has presented sufficient evidence in this regard is generally a factual matter for a jury to decide.[5]

Accordingly, no reasonable jury could find that Akers was improperly terminated in retaliation for constitutionally protected expression.  Summary judgment is granted to the Defendants on Akers's First Amendment claim.

---

[5]Even so, the record is replete with evidence that Akers's behavior *after* the election provided the impetus for her termination.  The affidavit of Kelby Thomas, Assistant Bell County Attorney, for example, suggests that Akers's previously discussed January 2007 meeting with Ward related to her behavior after the election, not her political activities during the election season.  Thomas, who witnessed the meeting between Ward and Akers, states that the meeting resulted from a "tense period" during which he received reports from county and state courthouse employees about inflammatory remarks made by Akers toward her political and party opponents from the previous election.  [R. 15, Attach. 5.]  Thomas apprised Ward of the complaints.  [*Id.*]  According to Thomas, at the meeting, Ward "elaborated upon the necessity of an effective working relationship between the County Attorney's Office and all government offices . . . in order to successfully execute our public duties.  [*Id.*]

Additionally, in his affidavit Bell County Sheriff Bruce Bennett states that he had a number of encounters with Akers in 2007.  [R. 35, Attach. 2.]  He avers that after Akers lost the election, her behavior toward him and his employees was "rude and hateful."  [*Id.*]  He explains that when she would bring tax forms to his office for his signature, she would throw them on his desk "with contempt," which caused him to inform Ward that he did not want Akers to bring anymore paperwork for him to sign.  [*Id.*]

The affidavit of Bell County Magistrate Lonnie Maiden, Jr., provides further evidence that Akers's behavior after the election led to her dismissal.  Maiden states that in December of 2007, while on an errand at the Bell County Courthouse, Akers approached him and asked him why she had not received a raise.  [R. 35, Attach. 1.]  Because Maiden was not familiar with Akers or her work, he told her she should take up the issue with her supervisor.  [*Id.*]  According to Maiden, Akers then "became irate, and she started accusing me of being part of the conspiracy against her.  I was embarrassed to be attacked in public with her false accusations."  [*Id.*]  Later the same day, Maiden complained to the County Judge about Akers's behavior.  [*Id.*]

**3.**

Finally, Akers asserts claims under the Kentucky Whistleblower Act, "which prohibits retaliatory action by the state or any of its political subdivisions against a public employee." *Miracle v. Bell Co. Emergency Med. Servs.*, 237 S.W.3d 555, 559 (Ky. App. 2007). Specifically, the Act provides:

> No employer shall subject to reprisal, or directly or indirectly use, or threaten to use, any official authority or influence, in any manner whatsoever, which tends to discourage, restrain, depress, dissuade, deter, prevent, interfere with, coerce, or discriminate against any employee who in good faith reports, discloses, divulges, or otherwise brings to the attention of the Kentucky Legislative Ethics Commission, the Attorney General, the Auditor of Public Accounts, the General Assembly of the Commonwealth of Kentucky or any of its members or employees, the Legislative Research Commission or any of its committees, members or employees, the judiciary or any member or employee of the judiciary, any law enforcement agency or its employees, or any other appropriate body or authority, any facts or information relative to an actual or suspected violation of any law, statute, executive order, administrative regulation, mandate, rule, or ordinance of the United States, the Commonwealth of Kentucky, or any of its political subdivisions, or any facts or information relative to actual or suspected mismanagement, waste, fraud, abuse of authority, or a substantial and specific danger to public health or safety.

KRS 61.102(1).

The Defendants argue that Akers's claims under the Whistleblower Act are barred by the statute of limitations. They point to KRS 61.103(2), which provides that employees alleging a violation of the Act "may bring a civil action for appropriate injunctive relief, or punitive damages, or both, within ninety (90) days after the occurrence of the alleged violation." Here, the Complaint alleges that Akers was terminated in December of 2007, but she did not file suit until December 5, 2008.

As Akers notes, however, in *Consolidated Infrastructure Management Authority, Inc. v.*

18

*Allen*, 269 S.W.3d 852, 856 (Ky. 2008), the Kentucky Supreme Court held that "[t]he 90-day limitation found at KRS 61.103(2), by its express language, applies only to claims for injunctive relief and/or punitive damages.  Claims for compensatory damages and other relief . . . are not subject to this limitation."  In her Complaint, Akers asks for both punitive and compensatory damages.  Under the decision in *Consolidated Infrastructure*, although her claim for punitive damages arising from any violation of the Whistleblower Act is barred by the statute of limitations, her claim for compensatory damages is not.

Still, the Defendants are entitled to summary judgment on Akers's Whistleblower Act claims.  The Act defines "employer" to mean the Commonwealth of Kentucky, any of its political subdivisions, or "any person authorized to act on behalf of the Commonwealth, or any of its political subdivisions, with respect to formulation of policy or the supervision, in a managerial capacity, of subordinate employees."  KRS 61.101(2).  Interpreting this provision, the Kentucky Supreme Court has held that the Act does not impose individual civil liability.  *Cabinet for Families & Children v. Cummings*, 163 S.W.3d 425, 434 (Ky. 2005) ("[T]he language of KRS 61.101(2) does not impose individual civil liability under Kentucky's Whistleblower Act for reprisal against public employees of the Commonwealth and its political subdivisions.").  *See also Miller v. Administrative Office of the Courts*, 448 F.3d 887, 897 (6ᵗʰ Cir. 2006).  Therefore, Akers's Whistleblower Act claims against Alben Brock, Jr., and Neil Ward in their individual capacities must be dismissed with prejudice.

Additionally, as noted by the Defendants, Akers's Whistleblower Act claims against the County of Bell and the individual defendants in their official capacities fail on the merits for the reasons discussed above.  To demonstrate a violation of the Act, the employee must establish the

19

following four elements:

> (1) the employer is an officer of the state; (2) the employee is employed by the state; (3) the employee made or attempted to make a good faith report or disclosure of a suspected violation of state or local law to an appropriate body or authority; and (4) the employer took action or threatened to take action to discourage the employee from making such a disclosure or to punish the employee for making such a disclosure.

*Davidson v. Commonwealth*, 152 S.W.3d 247, 251 (Ky. App. 2004).  *See also Woodward v. Commonwealth*, 984 S.W.2d 477, 480-81 (Ky. 1998) (specifying that the employer must be an officer of the state "or one of its political subdivisions," and that the employee must be a state employee "or an employee of a political subdivision").  Further, "[t]he employee must show by a preponderance of evidence that 'the disclosure was a contributing factor in the personnel action.'"  *Davidson*, 152 S.W.3d at 251 (quoting KRS 61.103(3)).  As stated above, Akers has not shown that any whistleblowing activities were a contributing factor in her termination.

If the Court did not find that these claims failed on the merits, the Court would dismiss them without prejudice on the alternative basis of sovereign immunity.[6]  Under KRS 61.103(2), an employee may file suit under the Kentucky Whistleblower Act "in the Circuit Court for the county where the alleged violation occurred, the county where the complainant resides, or the county where the person against whom the civil complaint is filed resides or has his principal place of business."  In *Durso v. Kentucky Ass'n of Counties, Inc.*, 32 F. Supp. 2d 929, 933 n. 8 (E.D. Ky. 1999), the court noted that this provision of the Act "specifically states that venue should be in state circuit court," and the court further stated that "[b]ecause Kentucky has waived

---

[6]Neither party raised the issue of sovereign immunity in their briefs.  Although "federal courts have no obligation to raise an Eleventh Amendment issue on their own, . . . they may do so if they wish."  *Nair*, 443 F.3d at 474. (citation omitted).  Accordingly, the Court considers it only as an alternative reason for granting the Defendants summary judgment on these claims.

20

its sovereign immunity under the Act, its determination as to where it may be sued should be strictly enforced."  Taking up the issue in *Rose v. Stephens*, 291 F.3d 917, 924 (6th Cir. 2002), the Sixth Circuit agreed.  Specifically, the Sixth Circuit explained that "in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in *federal court*."  *Id.* (quoting *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 241 (1985) (emphasis in original)).  Accordingly, the language of the Whistleblower Act, "which specifically waives Kentucky's sovereign immunity only in its own courts, is insufficient to waive the state's immunity from suit in federal court."  *Id.*

Akers asserts a claim under Kentucky's Whistleblower Act against the County of Bell.  Akers also asserts claims under the Act against several Bell County officials in their official capacities.  A suit against a county official in his or her official capacity is the same as a suit against the county itself.  *See Lambert v. Hartman*, 517 F.3d 433, 439-40 (6th Cir. 2008); *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  In light of the Sixth Circuit's decision in *Rose*, the County is entitled to dismissal of Akers's Whistleblower Act claims on the ground of sovereign immunity as well.  *See Baker v. McDaniel*, 2008 WL 215241, at *3 ("[U]nlike counties, cities in Kentucky are not entitled to sovereign immunity.").

**IV.**

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1.    The Defendants' Motion for Leave to Supplement [R. 27] is **GRANTED**;

2.    The Defendants' Motion for Summary Judgment [R. 15] is **GRANTED**;

21

3.      Judgment is entered contemporaneously herewith; and

4.      This is a final and appealable Order.

This the 29th day of March, 2010.

**Signed By:**

*__Gregory F. Van Tatenhove__*

**United States District Judge**

22